**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| APPLE INC., <br><br>         Movant <br><br>    v. <br><br> BASECAMP, LLC, <br><br>         Defendant. | Case No. 21-cv-3860 <br><br> Underlying Litigation: <br><br> *Cameron v. Apple Inc.,* <br>    No. 4:19-cv-3074 <br><br> *In re Apple iPhone Antitrust Litigation,* <br>    No. 4:11-cv-6714 <br><br> U.S. District Court for the Northern <br> District Of California |

**MEMORANDUM OF LAW IN SUPPORT OF APPLE INC.'S
MOTIONS TO COMPEL AND EXPEDITE PROCEEDINGS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .............................................................................................................. 5

    I.      APPLE'S MOTION TO COMPEL SHOULD BE GRANTED ............................ 5

         A.     The Requested Documents are Relevant. .................................................. 5

         B.     Movants' Arguments Concerning Undue Burden Fail. ............................. 8

         C.     Basecamp Cannot Rely on Any Purported First
             Amendment Privilege Because it has Long Been Waived. ...................................... 8

         D.     To the Extent the Court Allows Basecamp to Assert A First
             Amendment Associational Privilege (Despite the Waiver),
             That Privilege Does Not Apply Here ......................................................... 11

    II.     APPLE'S MOTION TO EXPEDITE SHOULD ALSO BE
    GRANTED ...................................................................................................... 15

CONCLUSION........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Prosperity Foundation v. Cal. AG*,
    No. 19-251, S. Ct. ___ (July 1, 2021) .......................................................12

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011) ..............................................................11

*In re Braden*,
    344 F. Supp. 3d 83 (D.D.C. 2018) ........................................................13

*Crownover v. Crownover*,
    No. 2:15-CV-132-AM-CW, 2017 WL 10575859 (W.D. Tex. July 12, 2017) .........................8

*Epic Games, Inc. v. Apple Inc.*,
    Case No. 20-cv-05640-YGR (TSH), Dkt. No. 399 (Discovery Order Apr. 6,
    2021) ..........................................................................3, 7, 11

*Fishon v. Peloton Interactive, Inc.*,
    336 F.R.D. 67 (S.D.N.Y. 2020) ...........................................................8

*Flynn v. Square One Distribution, Inc.*,
    No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673 (M.D. Fla. May 25, 2016).................13

*Klayman v. Judicial Watch, Inc.*,
    No. 06-cv-670, 2008 WL 11394177 (D.D.C. Jan. 8, 2008)..................................13

*Mas v. Cumulweus Media Inc.*,
    C 10-1396-EMC, 2010 WL 4916402 (N.D. Cal. Nov. 22, 2010) ...........................7

*McGehee v. U.S. Dep't of Justice*,
    362 F. Supp. 3d 14 (D.D.C. 2019) ........................................................15

*NAACP v. Alabama*,
    357 U.S. 449 (1958)......................................................................12

*Nat'l Org. for Marriage v. McKee*,
    723 F. Supp. 2d 236 (D. Me. 2010) .......................................................14

*North v. Walsh*,
    881 F.2d 1088 (D.C. Cir. 1989)...........................................................11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    993 F.3d 774 (9th Cir. 2021) .............................................................6

*Ott v. City of Milwaukee*,
    682 F.3d 552 (7th Cir.2012) ............................................................................9, 10

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ....................................................................11, 12, 13

*Raygoza v. Holland*,
    No. 16-CV-02978-EMC, 2018 WL 6002325 (N.D. Cal. Nov. 15, 2018) ..............................6

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ...................................................................................................5

*Tesla Motors, Inc. v. Johnson*,
    No. 1:16-CV-1158, 2017 WL 11500988 (W.D. Mich. Dec. 11, 2017) ......................6, 11, 15

*U.S. v. Anderson*,
    881 F.2d 1128 (D.C. Cir. 1989) ....................................................................................6

*United States v. Comley*,
    890 F.2d 539 (1st Cir.1989) .......................................................................................15

*Young v. City of Chicago*,
    2017 WL 25170 (N.D. Ill. 2017) ..............................................................................9, 10

## Statutes

U.S. Code § 1657 ........................................................................................................15

## Other Authorities

Fed. R. Civ. P. 37 37 (a)(1).............................................................................................5

Fed. R. Civ. P. 45 ............................................................................................... *passim*

Apple Inc. ("Apple") submits this Motion to Compel and Motion to Expedite these proceedings (the "Compel Motion") to compel the production of certain documents from Basecamp LLC ("Basecamp").

## PRELIMINARY STATEMENT[1]

On December 8, 2020, Apple served Basecamp with a Rule 45 subpoena (the "Subpoena") seeking documents highly relevant to two ongoing antitrust class action cases brought against Apple in the Northern District of California before U.S. District Judge Yvonne Gonzalez Rogers and U.S. Magistrate Judge Thomas S. Hixson.  These two class actions, one brought by a putative class of app developers and the other by a putative class of app consumers, essentially assert the same claims against Apple as asserted in a related, third antitrust action, filed in August 2020 by Epic Games, Inc. ("Epic"), the developer of the popular *Fortnite* video game, and which recently concluded in a three-week bench trial on May 24, 2021.[2]

On December 22, 2020, Basecamp interposed a set of objections and, later, produced a limited number of documents in response to the Subpoena.  Basecamp, however, objected to and did not produce any documents responsive to requests 10, 11, and 25 (the "Relevant Requests"). The Relevant Requests seek documents, information, and communications relating to Basecamp's relationship to and involvement with the Coalition for App Fairness (the "Coalition"), and communications between Basecamp (including Basecamp's *counsel*) and any app developer regarding the subject matter of the antitrust litigation brought against Apple and/or matters relating to app marketplaces and Apple's guidelines and policies.  In its written

---

[1] Apple respectfully refers this Court to the Declaration of Michael R. Huttenlocher, dated July 19, 2021, appended hereto, for a more fulsome recitation of the factual background.

[2]  A fourth antitrust action filed by app marketplace SaurikIT, LLC in December 2020 has been related to these cases and is also pending before Judge Gonzalez Rogers and Magistrate Judge Hixson.  *SaurikIT, LLC v. Apple, Inc.*, 20-cv-8733-YGR.

objections, Basecamp objected on the basis of relevance but agreed that it would meet and confer with Apple to agree upon a reasonable scope of production.  Notably, Basecamp did not interpose any specific privilege objections to any of the Relevant Requests.

For the reasons stated in Apple's accompanying Motion to Transfer the Motion to Compel, namely that Basecamp and its counsel have strategically attempted to avoid adjudicating this issue before the court most familiar with the underlying litigations, this Court should transfer these motions to the Northern District of California.  The Subpoena (and Basecamp's objections) implicates issues of relevance best suited to adjudication by the issuing court and absent a transfer there is significant risk of inconsistent rulings as Apple is seeking to compel production of similar documents from other app developers in three different courts.

In the event this Court chooses not to transfer, this Court should grant Apple's motion to compel.  To start, Basecamp waived any objection based on the First Amendment privilege.  A party responding to a Rule 45 subpoena must interpose objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  The only "privilege" objection asserted by Basecamp as to the Relevant Requests in its December 22, 2020 objections was its general objection to the production of material covered by the attorney-client privilege or work product doctrine or "any other privilege."  Basecamp's subsequent objections are insufficient to sustain its late First Amendment privilege objection.

To the extent that this Court entertains Basecamp's untimely First Amendment objection, the Court should reject it.  Basecamp cannot make out a *prima facie* case of impairment of its First Amendment rights because it is based on the inaccurate premise that the Coalition is a garden-variety non-profit organization engaged in political speech protected by the First Amendment.  The Coalition is not a political, grassroots organization seeking change in the

2

mobile app marketplace.  The evidence adduced at the trial before Judge Gonzalez Rogers exposed that Epic formed and funded the Coalition at around the same time Epic sued Apple as part of Epic's overall litigation and public relations strategy referred to internally at Epic as "Project Liberty."  Nothing in the First Amendment or any other law shields from discovery communications among a group of well-heeled businesses that seek to advance commercial interests under the banner of a litigation-created "Coalition."  Rather, the First Amendment is designed to protect only political speech, not the commercial speech at issue in this matter.

Not only that, but the Coalition is not a bystander to the underlying litigation in the Northern District of California.  Rather, the Coalition is a litigation adversary whose existence was admittedly "manufactured" to serve a strategic litigation purpose.  Indeed, some of its most prominent members (*e.g.*, Epic and founding Coalition members, Yoga Buddhi Co., ("Yoga Buddhi") and Match Inc. ("Match")) testified against Apple in the *Epic* Action litigation and/or provided documents and depositions in support of Epic.  Apple is entitled to know the degree to which Basecamp and the Coalition is coordinating with the class plaintiffs in the related class actions, as would be expected given the organization's mandate because its members stand to gain substantially if the lawsuits against Apple are successful.  The documents Apple seeks are highly relevant to the merits and Apple's defenses in the litigations.

The requested documents are also highly relevant to issues of class certification for which Apple must file its opposition brief by August 10, 2021.  The documents sought by the subpoenas are expected to demonstrate, among other things, heterogeneity among putative class members.  This includes whether certain class members were uninjured by Apple's conduct and/or would be worse-off should the putative class actions prevail in their battles against Apple

and whether there are developers/competitors that would be disparately impacted by changes in App Store policies that make the putative class representatives inadequate.

Additionally, Basecamp recently submitted a declaration in support of a motion to quash a similar subpoena Apple served on the Coalition, wherein Basecamp claimed to fear retaliation by Apple if its communications are disclosed.  But, this claim is belied by the reality that Basecamp has already been publicly vocal about its opposition to Apple's App Store policies. The issue is not about retaliation or Basecamp's public statements, which it is certainly entitled to make; rather, Apple is entitled to fully defend itself in a litigation in which the Coalition and its members have participated at plaintiffs' behest.  With respect to the retaliation charge in particular, Basecamp currently has its apps listed on the App Store and are subject to the same Apple Guidelines as all other developers (and Basecamp does not claim otherwise).  Basecamp's alleged "fears" about retaliation are ginned up to avoid its production obligations.

Finally, Basecamp can hardly be heard to complain about the scope of the Relevant Requests when it has refused to engage in any meaningful meet and confer with Apple and chose instead to stand on its blanket objections to the Subpoena.  Basecamp has identified no documents that it would be willing to produce, refused to discuss custodians or search terms, and have declined to articulate any actual burden in responding to the Relevant Requests.

Basecamp should be required to collect and review documents responsive to the Relevant Requests and expedite the production of documents germane to Apple's upcoming class certification opposition.  In the event that Basecamp encounters some burden in responding to the Relevant Requests, the Court should require Basecamp to meet and confer with Apple expeditiously to identify ways to ease that burden while still providing Apple with the documents to which it is entitled.

**ARGUMENT**

**I.     APPLE'S MOTION TO COMPEL SHOULD BE GRANTED**

This Court should transfer Apple's Motion to Compel to the Northern District of

California.  But, to the extent this Court denies Apple's Motion to Transfer, this Court should

grant Apple's Motion to Compel.  A party may move to compel discovery provided that it "has

in good faith conferred or attempted to confer with the person or party failing to make disclosure

or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  When

relevant to the subject litigation, the Federal Rules of Civil Procedure "often allow extensive

intrusion into the affairs of both litigants ***and third parties***.'"  *Seattle Times Co. v. Rhinehart*,

467 U.S. 20, 30, 34 (1984) (emphasis added).

**A.     The Requested Documents are Relevant.**

First, communications about the App Store or App Store litigation are relevant to, among

other things, the harm or benefits the developers perceive from the App Store and the policies at

issue in the litigations, the positive experiences that developers have had with Apple's App

Review process (both through machine learning and human review), the importance to them of

Apple's security and privacy features for app development and customer acquisition, and the

varying monetization strategies that developers are able to deploy.  Obviously, such

communications between and among app developers about the policies being challenged by a

putative class representative are relevant to the merits of the class actions and Apple's defenses.

Second, the requested evidence is also highly relevant to the pending motion for class

certification, including whether there are individualized differences among developers that defeat

predominance and issues concerning injury.  In addition, there are bound to be app developers

that will be injured by the changes that the putative class seeks, yet swept into the proposed class

along with their direct competitors.  These types of conflicts among putative class members are

squarely relevant to a Rule 23 inquiry, *see Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 791 (9th Cir. 2021) (citations omitted) ("When considering if predominance has been met, a key factual determination courts must make is whether the plaintiffs' statistical evidence sweeps in uninjured class members."), and Basecamp's communications bearing on them are certainly discoverable.

Third, the discovery sought by Apple is relevant to the issue of bias. *Raygoza v. Holland*, No. 16-CV-02978-EMC, 2018 WL 6002325, at *21 (N.D. Cal. Nov. 15, 2018) ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest.  Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." (*citing United States v. Abel*, 469 U.S. 45, 52 (1984)); *U.S. v. Anderson*, 881 F.2d 1128, 1136 (D.C. Cir. 1989) ("Bias of a witness is always relevant.").  Here, it is likely that Basecamp will be called as a witness by plaintiffs at trial should a class be certified.  Other Coalition members were already called in the Epic case.  Coalition member Yoga Buddhi testified at the Epic trial and Coalition member Match was deposed and that deposition transcript was relied upon heavily by Epic at trial.  Apple is entitled to these materials that squarely go toward this issue of bias. *Tesla Motors, Inc. v. Johnson,* No. 1:16-CV-1158, 2017 WL 11500988, at *2 (W.D. Mich. Dec. 11, 2017) ("[D]espite their status as nonparties, the Dealers' are not merely 'bystanders' in this case . . . . [and thus] the communications sought in discovery are directly and highly relevant to Tesla's claims.")

Apple cannot wait to see if Basecamp will be called at trial and then request documents because it will be too late.  In fact, during the *Epic v. Apple* trial, Facebook and Microsoft were listed on Epic's witness list after discovery had closed and Apple sought production of

documents from Facebook to prepare for trial.  Apple was denied that discovery on the basis that it was untimely – not that it was substantively inappropriate.  Basecamp should not be able to make this same argument.  *See Epic Games, Inc. v. Apple Inc.*, Case No. 20-cv-05640-YGR (TSH), Dkt. No. 399 (Discovery Order Apr. 6, 2021).

Fourth, Judge Gonzalez Rogers made clear during the *Epic v. Apple* trial that the level of coordination between the app developers and the plaintiff (Epic) was relevant.  Judge Gonzalez Rogers asked Epic CEO Tim Sweeney whether he had consulted with counsel for the developer class action prior to filing suit against Apple.  (Huttenlocher Decl. Ex. 8 at 155:13-25 (Sweeney ("The Court: Mr. Sweeney, at this time before you did this, did you contact the lawyers who had already sued Apple on this same topic, the lawyers who were representing a class of developers? Did you contact them?  The Witness: I don't know if that -- if counsel contacted them or not. I didn't -- I wasn't involved in any contact.").)  The Court's question went directly to whether there was some grander level of coordination between litigants suing Apple, the very discovery that Apple seeks now from Movants.  Although Mr. Sweeney had no personal knowledge, he did not foreclose the possibility that such communications took place; and, if they did, Apple is clearly entitled to the production of these communications.

Finally, Basecamp also cannot claim that it is somehow an "absent class member" and, thus, immune from discovery in the underlying actions.  Discovery of absent class members is permitted if "the class member has inserted herself into the litigation."  Basecamp has inserted itself in the underlying litigations.  "There is no blanket rule barring discovery with respect to absent class members."  *Mas v. Cumulweus Media Inc*., C 10-1396-EMC, 2010 WL 4916402, at *3-4 (N.D. Cal. Nov. 22, 2010).  Moreover, "[c]lass certification is a pivotal stage in civil litigation" and "a defendant should not be unfairly prejudiced by being unable to develop its case

7

even though facts of the case may reside with the absent class members." *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 70 (S.D.N.Y. 2020) (internal citations omitted).

**B.      Movants' Arguments Concerning Undue Burden Fail.**

In its written objections in response to the Relevant Requests, Basecamp stated that it was "willing to meet and confer on a reasonable scope that is not overly broad and unduly burdensome."  Basecamp's burden objection is disingenuous.

Basecamp has not asserted that it has done any search to identify relevant documents nor provided any basis or details concerning the alleged burden placed on it by the Relevant Requets. *Crownover v. Crownover*, No. 2:15-CV-132-AM-CW, 2017 WL 10575859, at *5 (W.D. Tex. July 12, 2017).  Instead, Basecamp asserts a blanket relevance and privilege objection to *the entirety of the Relevant Requests*.  In so doing, Basecamp refused to discuss with Apple ways to ease any alleged burden and, accordingly, Basecamp's burden objections must fail.

**C.      Basecamp Cannot Rely on Any Purported First Amendment Privilege Because it has Long Been Waived.**

Pursuant to Rule 45(d)(2)(B), a party "commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection. . . .  The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  As discussed above, Apple served Basecamp with the Subpoena on December 8, 2020 and Basecamp served its written objections on December 22, 2020.  Basecamp's written objections do not object to any of the Relevant Requests – or, for that matter, any request – on the basis of the First Amendment.  In contrast to the Coalition's recent responses and objections to Apple that specifically object to the subpoena "to the extent that it seeks documents protected from disclosure by the First Amendment."  (Huttenlocher Decl. Exs. 17, 18, and 19.)

For the Relevant Requests, Basecamp only made specific objections on the basis that the Subpoena "fail[ed] to allow reasonable time for the collection, review, and production of documents and data"; sought "disclosure of proprietary and/or confidential business information"; and sought "information that is not relevant to the matters at issue in this case." (Huttenlocher Decl. Ex. 12.)  Although Basecamp includes a boilerplate general objection to the production of documents covered by the attorney-client privilege or "any other applicable privilege," Basecamp did not interpose any specific privilege objections to the Relevant Requests and did not make *any* written objection on the basis of the First Amendment.  (*Id.*)  Basecamp did, however, agree to "to meet and confer on a reasonable scope that is not overly broad and unduly burdensome, not duplicative of information that is available publicly or from other parties, and seeks discovery that is proportional to the needs of the case." (*Id.*)

Apple met and conferred repeatedly with Basecamp but it was not until after Apple served a subpoena upon the Coalition in June of 2021 that Basecamp asserted its newly minted First Amendment privilege objection.  Basecamp's objection, however, is hopelessly late and was waived long ago.  *Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir.2012) ("Rule 45 'require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game." (internal quotations omitted)); *Young v. City of Chicago*, 2017 WL 25170 (N.D. Ill. 2017) ("Rule 45(e) specifies additional requirements when a person withholds subpoenaed material based on a claim of privilege or work-product protection, including a requirement that the person expressly make the claim.").

In addition, Basecamp's cursory objection to the production of documents based on "any other privilege" is insufficient to preserve Basecamp's alleged First Amendment privilege objection.  Pursuant to Rule 45(e)(2), a party "withholding subpoenaed information under a

claim that it is privileged . . . must expressly make the claim; and describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Fed. R. Civ. P. 45(e)(2)(A)(i)-(ii).  There can be no dispute that Basecamp did not "expressly make the claim" that its communications were protected from disclosure pursuant to the First Amendment in its initial written objections.  Basecamp's later, verbal objection made during meet and confers with Apple is insufficient because Rule 45 "require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game." *Ott v. City of Milwaukee*, 682 F.3d at 558 (quoting *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (internal citations omitted).

Basecamp also failed properly to "describe the nature of the withheld documents" because it failed to provide Apple with a privilege log in response to the subpoena.  "Rule 45(e) specifies additional requirements when a person withholds subpoenaed material based on a claim of privilege or work-product protection, including a requirement that the person "expressly make the claim," Fed. R. Civ. P. 45(e)(2)(A)(i), and **prepare a privilege log**, *see also id.* R. 45(e)(2)." *Young v. City of Chicago*, 2017 WL 25170, at *6 (emphasis added). "Together, Rules 45 and 26(b)(5) give a party or subpoenaed nonparty responding to discovery a choice: prepare an adequate privilege log or risk an order compelling disclosure of the allegedly privileged material." *Id.* (citing *Mosley v. City of Chi.*, 252 F.R.D. 445, 449 n.5 (N.D. Ill. 2008) (under Rule 45, someone served with a subpoena "can either prepare a privilege log or waive any claim of privilege.").  Basecamp's failures to follow Rule 45 in making its First Amendment privilege objection results in a waiver of that privilege claim.

**D.** **To the Extent the Court Allows Basecamp to Assert A First Amendment Associational Privilege (Despite the Waiver), That Privilege Does Not Apply Here**

    *1.* *Legal Standard for First Amendment Privilege*

Basecamp asserts an objection to *all documents* sought by the Relevant Requests as protected from disclosure by the First Amendment.  (Huttenlocher Decl. ¶ 25.)  Apple is not seeking discovery from Basecamp because of its public stance against Apple.  Instead, Apple is seeking discovery because Basecamp and its fellow Coalition members inserted themselves into litigation brought against Apple and were used as a sword in the *Epic* Action.  Basecamp cannot shield itself from discovery based on a blanket – and inapplicable – First Amendment privilege.

Basecamp's objection rests on the foundation that its association with the Coalition is protected under the First Amendment.  But, the Coalition is not a political organization engaged in protected speech.  The Coalition is, at most, a trade association organized to advance, through the litigation process, the commercial, pecuniary interests of its members.  Thus, Basecamp cannot rely upon *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) as a basis for its objection because *Perry* applies only to political – not commercial – speech.  *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (holding that *Perry* was limited to political – not commercial – speech); *Tesla Motors, Inc.*, 2017 WL 11500988, at *2 (holding that "[t]he Magistrate Judge appropriately distinguished *Perry* and the highly volatile nature of the interests and issues in that case from those here, which are essentially commercial interests").  Indeed, even Basecamp's communications with government agencies about the App Store and its policies are not protected.[3]

---

[3] To the contrary, FOIA establishes the public's right to such documents.  *North v. Walsh*, 881 F.2d 1088, 1095 (D.C. Cir. 1989) ("[N]o showing of relevance or need is required to obtain documents under FOIA.").

However, even if some of Basecamp's communications were protected by the First Amendment privilege, the party asserting the privilege bears the burden of showing that compliance with the discovery requests will result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of the members' associational rights." *Perry*, 591 F.3d at 1160 (internal quotations and marks omitted); *see also Black Panther*, 661 F.2d at 1268 (party asserting privilege must show "there is some probability that disclosure will lead to reprisal or harassment").  Only if Basecamp can clear this hurdle – which it cannot – will the burden shift to Apple to "demonstrate that the information sought through the [discovery] is rationally related to a compelling . . . interest . . . [and] the least restrictive means of obtaining the desired information." *Perry*, 591 F.3d at 1161 (internal quotations omitted); *see also Black Panther Party*, 661 F.2d at 1266 ("[T]he plaintiff's First Amendment claim should be measured against the defendant's need for the information sought.").  As established in Section I.B., Apple's need for these relevant documents outweighs any alleged First Amendment privilege.

> 2. *Basecamp Cannot Establish a Prima Facie Showing of any First Amendment Harm*

Here, Basecamp cannot establish a prima facie showing of any First Amendment harm. Speculation aside, Basecamp cannot establish that there is any real threat of retaliation or chilling of the members' associational rights.

First, production of documents to Apple will not reveal opposition to Apple that was not already public.  Basecamp is a publicly disclosed member of the Coalition – distinguishing this case from *Perry* and *NAACP v. Alabama*, 357 U.S. 449, 462 (1958), which sought primarily to protect membership lists from disclosure.  *Cf. Americans for Prosperity Foundation v. Cal. AG*, No. 19-251, S. Ct. ___ (July 1, 2021) (similar).

Second, the Protective Order entered by Judge Gonzalez Rogers allows Basecamp to produce documents for "Attorneys' Eyes Only," such that no Apple decision-maker would see them, let alone use them – this protection alone leans heavily in favor of production. "A protective order limiting the dissemination of disclosed associational information may mitigate the chilling effect and could weigh against a showing of infringement." *Perry*, 591 F.3d at 1160 n.6 & 1164; *In re Braden*, 344 F. Supp. 3d 833, 93 (D.D.C. 2018) (holding that a "protective order filed in the underlying case . . . may mitigate the chilling effect and could weigh against a showing of [First Amendment] infringement." (internal citations omitted)); *see also Klayman v. Judicial Watch, Inc*., No. 06-cv-670, 2008 WL 11394177, at *4 (D.D.C. Jan. 8, 2008). At no point has Basecamp explained why this protective order is insufficient to guard Basecamp's alleged confidential materials from disclosure.

Third, Apple's uniform application of its guidelines means that there are no practical consequences to Basecamp joining the Coalition or associating with other app developers with respect to its business relationship with Apple or the App Store. (Huttenlocher Decl. Ex. 8 at 2832:16-24 (Schiller (discussing goal to "provide developers a consistent equally fair set of rules across all developers."); and at 946:17-947:5 (Fischer ("The App Store review guidelines apply equally to all developers")).) Basecamp's apps are available for download on the App Store, which are subject to the same policies applied to all developers.

Fourth, any claim advanced by Basecamp that compelled disclosure of responsive would have a chilling effect on its exercise of its First Amendment rights would be mere speculation. *See Flynn v. Square One Distribution, Inc*., No. 6:16-MC-25-ORL-37TBS, 2016 WL 2997673, at *1, 3 (M.D. Fla. May 25, 2016) (holding that the chairman's affidavit "which is the only evidence submitted in support of his motion, is not sufficient to satisfy his burden" in part

because "his opinion about what other members will and will not do is speculation and conjecture.  It is not based on historical facts, personal observations, personal experience, or first-hand knowledge.").  In the parallel matter over Apple's subpoena to the Coalition, Basecamp's CEO submitted a declaration in support of the Coalition's motion to quash claiming that it fears that Apple will remove its apps from the App Store or reject their app updates due to their internal communications concerning the Coalition or otherwise that are responsive to the Relevant Requests.  (*See* Huttenlocher Decl. Ex. 20 ¶ 11).)  But, Basecamp does not (and cannot) allege that its apps are not on the App Store or have been removed because it joined the Coalition.  Basecamp also testified against Apple before Congress in Congressional hearings and, yet, it has not alleged any acts of retaliation by Apple as a result.  (*See* https://www.judiciary.senate.gov/imo/media/doc/4.21%20Jared%20Sine%20Submitted%20Testimony%20Senate%20Jud%20Antitrust%20Sbcmte.pdf.)

Even Epic was told that it could resume putting *Fortnite* on the App Store if it complied with Apple's Developer Program License Agreement – which Epic stipulated that it breached. (Huttenlocher Decl. Ex. 8 at 58:6-9 (Apple Opening ("Now, even though Epic had breached, Apple told Epic that *Fortnite* was welcome back into the App Store, as long as Epic would comply with the guidelines that apply equally to all developers.").)  There is just no plausible basis for Basecamp's purported fear of retaliation.

Fifth, Basecamp has yet to provide any objective and articulable facts concerning retaliation.  Rather, Basecamp's "proof" is merely hearsay and speculation as to the broad "concerns" of actual or prospective members and is insufficient to carry its burden. (Huttenlocher Decl., Ex. 20 ¶ 14 (relying on hearsay of having "spoken with the CEOs of several other app companies").  *Nat'l Org. for Marriage v. McKee,* 723 F. Supp. 2d 236, 242 (D. Me.

2010) (concluding "[t]he record must contain objective and articulable facts, which go beyond broad allegations or subjective fears."); *U.S. v. Comley*, 890 F.2d 539, 543-44 (1st Cir. 1989).

Sixth, the disclosure Apple seeks is not public disclosure but instead private disclosure. *Tesla Motors, Inc. v. Johnson*, 2017 WL 11500988, at *2 ("Here, it is not a question of the government seeking to obtain and publicize a list of names, but of a private litigant seeking to view a list for the purpose of deposing individuals who may have relevant information about a pending case. ***Thus, there is not only a strong interest to justify 'disclosure,' but the disclosure itself, under the court's protective orders, is not to be public disclosure, but private disclosure for a limited use***." (emphasis added)).

## II.   APPLE'S MOTION TO EXPEDITE SHOULD ALSO BE GRANTED

Finally, Apple's class certification motion is due on August 10, 2021.  Given that deadline and the relevance of the materials sought from Basecamp to Apple's class certification opposition, the Court should grant Apple's Motion to Expedite.  "District courts enjoy broad discretion when deciding case management and scheduling matters."  *See McGehee v. U.S. Dep't of Justice*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019).  It is well-settled that courts "shall expedite the consideration of any action . . . if good cause therefor is shown."  28 U.S. Code § 1657.

Basecamp will suffer no prejudice from the proposed briefing schedule as they have been well aware of these issues for months.  Apple sent counsel for Basecamp a draft of its section of a proposed joint letter brief to be submitted to Magistrate Judge Hixson containing substantially the same legal arguments contained herein on July 7, 2021.  (Huttenlocher Decl. Ex. 13.)

## CONCLUSION

For the reasons stated herein, Apple respectfully requests that the Court grant its Motion to Transfer or, in the alternative, grant Apple's Motion to Compel and Expedite.

Dated: July 20, 2021           **MCDERMOTT WILL & EMERY LLP**

By: */s/ Daniel Campbell*
Daniel Campbell
444 West Lake Street
Chicago, IL 60606-0029
Tel:  312-372-2000
Fax:  312-984-7700
dcampbell@mwe.com

John J. Calandra (motion for
admission *pro hac vice* pending)
Nicole Castle (motion for
admission *pro hac vice* pending)
Michael R. Huttenlocher (motion for
admission *pro hac vice* pending)
340 Madison Avenue
New York, New York 10173
Tel:  212-547-5400
Fax:  212-547-5444
jcalandra@mwe.com
ncastle@mwe.com
mhuttenlocher@mwe.com

*Attorneys for Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel Campbell, an attorney, hereby certify that on July 20, 2021, I caused a true and correct copy of the foregoing to be filed and served electronically via the court's CM/ECF system.  Notice of this filing was sent via email to the following parties.

Brandon Kressin
KANTER LAW GROUP
1717 K Street NW
Suite 900
Washington, DC 20006
Tel.: 202-792-3037
brandon@kanterlawgroup.com
*Counsel for the Coalition for App Fairness*

<u>*/s/ Daniel Campbell*</u>
Daniel Campbell
444 West Lake Street
Chicago, IL 60606-0029
Tel:  312-372-2000
Fax:  312-984-7700
dcampbell@mwe.com